### DICKEY v. GOERTNER.

(Supreme Court, Special Term, Kings County. January, 1914.)

1. MORTGAGES (§ 33*)—ABSOLUTE DEED ACCOMPANIED BY DEFEASANCE.

   A deed to land subject to mortgages and a written agreement between the parties to the deed, to which the deed was made subject, providing that the conveyance was made to secure the grantee for advances made and to be made to the grantor, that the grantee might rent the premises and collect the rents applying them on one of the mortgages, that when the grantor should repay such advances with interest the grantee should reconvey such property, and that the grantee should have no right or power to sell, assign, or incumber the land except with the grantor's consent, created the relation of mortgagor and mortgagee with the right of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

possession in the mortgagee, and did not create any relation involving any special trust or confidence.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 67–82; Dec. Dig. § 33.*]

2. MORTGAGES (§ 559*)—FORECLOSURE—JUDGMENT FOR DEFICIENCY.

Where a deed absolute in form given to secure a loan is foreclosed as a mortgage, a deficiency judgment is authorized.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1592, 1600–1603, 1605–1608; Dec. Dig. § 559.*]

3. MORTGAGES (§ 529*) — FORECLOSURE — SALE — VACATING — INADEQUACY OF PRICE.

Inadequacy of price is not a sufficient ground for setting aside a foreclosure sale; but, where the mortgagee becomes the purchaser, it is a circumstance to be given some weight in determining whether the sale should be vacated.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1537–1548; Dec. Dig. § 529.*]

4. MORTGAGES (§ 529*)—FORECLOSURE—SALE—VACATING—GROUNDS.

A foreclosure sale will be set aside upon slighter grounds, where the mortgagee purchases, than where the purchaser is an outsider.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1537–1548; Dec. Dig. § 529.*]

5. MORTGAGES (§ 510*)—FORECLOSURE—SALE—NOTICE.

Where a grantor sued for an accounting under a deed absolute in form given to secure advances, and judgment was rendered foreclosing the deed as a mortgage, the mortgagor stood in the position of a mortgagor and owner of the equity of redemption, and was entitled to service of notice of the sale, as of a proceeding in the action, on his attorney or himself, where he appeared personally, distinct from the published notice, especially in view of the practice in New York City for many years of serving such notice in foreclosure suits.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1512; Dec. Dig. § 510.*]

Action by Paul Dickey against Christopher A. Goertner, in which a judgment was rendered in favor of defendant foreclosing a mortgage. On motion by plaintiff to vacate and set aside the foreclosure sale. Motion granted on conditions.

See, also, 159 App. Div. 913, 144 N. Y. Supp. 1112.

Paul Dickey, in pro. per.

G. H. Hinnau, of New York City, opposed.

BENEDICT, J. This is a motion to vacate and set aside a sale in foreclosure held on November 9, 1909, under a judgment of this court. As I have reached the conclusion that the motion should be granted, and as the circumstances of the case are unusual and extraordinary, I have felt it incumbent upon the court to examine the record for the purpose of deciding the claim of the plaintiff that he had been unjustly deprived of his property under the forms of legal proceedings. This investigation makes it proper to state at some length the history of this case, which has heretofore very frequently engaged the attention of this court, both at Special Term and in the Appellate Division.

The facts, in so far as I have been able to ascertain them from the record which is submitted on this motion, are substantially as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] Paul Dickey, the plaintiff, by a deed made in the year 1901 and recorded on October 18th of that year, conveyed to the defendant for a nominal consideration two lots of land on Seventy-Second street, near Twenty-First avenue, in the borough of Brooklyn, subject to two mortgages; the first for $2,500, and the second for $250. At the same time, the parties to the conveyance entered into an agreement in writing bearing date on the 28th day of September, 1901, to which the deed is made subject. By the terms of this agreement it was recited that Dickey was about to convey to Goertner the above-mentioned lots in fee, but that the true object of the conveyance and the intent of the parties was to vest the title in Goertner "in order to secure the party of the second part for certain advances of money heretofore made to the party of the first part, and for such other advances as may hereafter be made to said party of the first part." And it was agreed, first, that Goertner should have the power to rent the premises and collect the rents therefrom, applying any rents which he might collect toward the payment of the monthly installments due upon the second mortgage. Secondly, it was provided:

"Whenever the party of the first part shall repay to the party of the second part the full amount of money advanced by said party of the second part, including any advances that may be made subsequently to the execution of this agreement, with interest at the rate of six per centum per annum, then upon such payment the party of the second part shall reconvey to the party of the first part the fee title to all said above described property, free from all claims of the party of the second part, and the said party of the second part hereby covenants and agrees to reconvey said property and to execute a full covenant warranty deed thereof in the usual form immediately after and upon such repayment by said party of the first part to said party of the second part." Thirdly, "the party of the second part shall not have any right or power to sell or assign the said property or to in any way incumber the same except with the consent of the party of the first part until five years from the date hereof."

I think it is clear that the effect of this deed and agreement was simply to create the relation of mortgagor and mortgagee between the parties; the mortgagee having the right to go into possession of the mortgaged premises and to retain such possession until the satisfaction of the indebtedness provided for in the agreement. I think it is also clear that the relation so created was not one involving any special trust or confidence on the part of the grantee in the conveyance in favor of the grantor. Lewis v. Duane, 141 N. Y. 302, 36 N. E. 322.

After the lapse of several years, during the course of which the plaintiff had lost his eyesight, the plaintiff, in or about the month of January, 1906, began an action in this court setting forth the deed and agreement and stating that he had demanded an accounting from the defendant of the rents collected and the amounts disbursed and had offered to repay any amount due to the defendant and had demanded a reconveyance, and praying that an accounting be had, and that if it should be found that any amount was due to the plaintiff that the defendant be required to reconvey the property to him, and that if it should be found that any amount was due to the defendant that upon payment of such amount by the plaintiff the property be reconveyed. The defendant interposed an answer admitting the deed and

the agreement, but he alleged, as a separate cause of action and counterclaim, that he had advanced and expended various sums of money for the purpose of preserving and caring for the property, and in paying taxes and charges and in repairs to the building; that he had collected the rents from the tenants, and the rents were insufficient to liquidate the indebtedness of the plaintiff; that the aggregate amount of such payments was $2,523.13; that he had received $830 in rentals; and that there was due to him the sum of $1,693.13. And he further alleged, as a separate cause of action and counterclaim, that he had rendered and performed labor and services consisting in caring and attending to the property and paying the debts of the plaintiff, preventing the liens on said property from being foreclosed, keeping the same in tenantable condition, superintending the work necessary to be done in this respect, renting and endeavoring to rent the same, collecting the rent, all of which services were of the reasonable value of $1,125, and he demanded judgment for the said two sums of money, and for any other sums which he should further advance to the plaintiff during the pendency of this action and the costs and disbursements of the action. The plaintiff served a reply, putting in issue the payments so claimed to have been made, and denying the allegation respecting the alleged services. Some two years later, during which nothing appears to have been done, the defendant, upon motion, was permitted to serve a supplemental answer alleging further disbursements claimed to have been made by him on behalf of the plaintiff; the excess of which over the amount of rent collected during the last-mentioned period being $314.75, for which he asked judgment.

With the issues in this condition, the case came on for trial before the Special Term of this court in December, 1908, and the court found and decided that the conveyance was, in fact, a mortgage, and that the amounts found due in the findings of fact, together with any amount found due by the referee appointed by the interlocutory judgment to compute the same, should constitute the amount due to the defendant from the plaintiff at the date of the trial. It also found that the plaintiff was entitled to redeem the premises from the mortgage upon payment of the amount so found due, with interest thereon, on or before 30 days from the service of notice of the entry of an order confirming the report of said referee; that the defendant was entitled to interlocutory judgment decreeing that, in the event of the plaintiff failing to redeem the premises within thirty days after service of notice of entry of an order confirming the referee's report, the defendant should have final judgment of foreclosure and sale on said mortgage.

Subsequently, the referee, to whom the matter was referred by the interlocutory judgment bearing date the 10th day of April, 1910, reported that there was due to the plaintiff from the defendant upon the 21st day of December, 1908, the sum of $2,641.18. This report was confirmed, and a final judgment of foreclosure and sale was made upon the 4th day of October, 1909. An appeal was taken from this judgment to the Appellate Division, where it was affirmed without opinion on June 10, 1910 (139 App. Div. 910, 123 N. Y. Supp. 1114). This judgment,

therefore, became the law of the case for the parties hereto, and yet, in passing, and especially in view of the subsequent proceedings, it may not be improper to remark that if the question were an open one, and if the question were not now res judicata, it would seem that the deed could not be regarded as security for the claim of defendant for compensation for his own services as alleged in the fifth paragraph of his answer, because the original agreement did not so provide, and his remedy, if he were entitled to any compensation at all for such services, would be confined to an action at law for the recovery of their value; and it might be urged that the provision of the interlocutory judgment which required the plaintiff to pay the defendant the amount due him in 30 days was invalid for the reasons assigned by Mr. Presiding Justice Parker in Foley v. Foley, 15 App. Div. 276, page 282, 44 N. Y. Supp. 588, page 591, where he says:

"Such provision amounts to a strict foreclosure of the plaintiff's equity of redemption. It requires her to redeem in an unusually short time (Perine v. Dunn, 4 Johns. Ch. 140), and grants to the defendant relief that is rarely granted against a mortgagor in this state. The defendant's rights in the matter are but those of an ordinary mortgagee in possession, and do not require for their protection the enforcement of so severe a remedy. Certainly such relief is not warranted in an action where it is not suggested by either of the pleadings, and is very far outside of any issue tendered by them. Smidt v. Jackson, 11 Hun, 361; Bolles v. Duff, 43 N. Y. 469; Denton v. Ontario County N. Bank, 150 N. Y. 126 [44 N. E. 781]. No fact is found, or conclusion of law contained, in the decision which warrants a judgment directing any foreclosure whatever of the plaintiff's equity of redemption. It is not there found that plaintiff had made default in paying the amounts which the deed was given to secure."

It will be noticed, also, that the interlocutory judgment provided that the defendant should have, without notice to the plaintiff, the right as of course to enter the usual judgment of foreclosure and sale of the premises; said judgment to provide for the usual allowance of 2½ per cent. to defendant Goertner and costs of the action. It will be seen that this provision was violative of the right of the plaintiff to notice of the application for the judgment, and granted an extra allowance without giving to him, although entitled to notice of all proceedings in the action, any opportunity to be heard as to whether the report was correct, or as to the amount of the additional allowance. See Citizens' Savings Bank v. Bauer, 49 Hun, 238, 1 N. Y. Supp. 450, per Bartlett, J.

[2] The final judgment dated October 4, 1909, provided that a deficiency might be specified by the referee and that the plaintiff should pay the same to the defendant, who should have judgment and execution therefor.

There seems to be authority for giving a deficiency judgment in a case where a deed absolute in form is given to secure a loan, and where the deed is decreed to be foreclosed as a mortgage. See Boocock v. Phipard, 52 Hun, 614, 5 N. Y. Supp. 228, reported sub nom. Bocock v. Phipard, 24 N. Y. St. Rep. 267. Section 1204 of the Code of Civil Procedure provides that:

"Judgment may be given for or against one or more plaintiffs, and for or against one or more defendants, * * * and it may grant, to a defendant, any affirmative relief, to which he is entitled."

And section 1207 provides that:

"Where there is an answer, the court may permit the plaintiff to take any judgment, consistent with the case made by the plaintiff, and embraced within the issue."

[3, 4] Under the terms of the judgment of October 4, 1909, the referee advertised the property for sale and sold it upon the 9th day of November, 1909. At this sale the property was bid in by the defendant for the sum of $150, subject to the two mortgages which were liens upon the property when the defendant took title to it in 1901, and the referee reported a deficiency in favor of the defendant amounting to $2,944.10. The plaintiff claims that the price realized upon the sale was totally inadequate to the value of the property. This, of course, is not sufficient ground for setting aside a judicial sale; but where the mortgagee becomes the purchaser it seems to be a circumstance to be given some weight in reaching a determination as to whether a judicial sale should or should not be vacated, because where the mortgagee purchases the rule is well settled that the sale will be set aside upon slighter grounds than where an outsider becomes the purchaser. Wiltse on Mortgage Foreclosure, 629; Tripp v. Cook, 26 Wend. 143.

[5] The plaintiff bases the present application upon several grounds, all of which proceed upon the erroneous assumption that the foreclosure proceeding was the statutory foreclosure by advertisement, whereas it was a foreclosure by an action in equity; but one point which he does not raise seems to me to be controlling of this application. It is this: That there was no notice of the sale given to the plaintiff in this action, who, according to the judgment, stood in the position of a mortgagor and the owner of the equity of redemption. The referee's report, which was not confirmed, it is true, contained a statement that he "caused due notice of the sale of the said lands and premises on the 9th day of November, 1909, at the Brooklyn Real Estate Exchange, 189 Montague street, in the borough of Brooklyn, in the county of Kings, in the city of New York, to be given and published according to law and the rules and practice of this court, as will fully appear by the affidavits hereto annexed"; but nowhere annexed to the report is any affidavit or other proof that notice was given to this plaintiff, the only affidavits being those showing publication of the printed notice in two newspapers. The plaintiff's position under the pleadings and judgment in the action was unquestionably the same as that of a defendant in a foreclosure action who had appeared and answered. In my opinion, such a defendant is entitled to service upon his attorney, or, if he has appeared per se, then upon himself, of notice of the sale as of a proceeding in the action, separate and distinct from the notice of sale which is, under the provisions of the Code, required to be published by the referee appointed to conduct a judicial sale. This question has not, in so far as I have been able to ascertain, received definite and final judicial determination; but I think that the better rule, both upon reason and authority, is the one requiring notice of the sale to be given to parties who have appeared in the action, in addition to the notice published in the newspapers under the sections of the Code. Certainly this has been the practice at the bar in this city for many years, and it

is a practice which should be encouraged rather than discontinued. In Eidlitz v. Doctor, 24 Misc. Rep. 209, 53 N. Y. Supp. 525, Judge Daly says:

"It is conceded that no notice of sale was served pursuant to such appearance, and that no notice of the sale was given except by the usual advertisement by the referee in the papers. It is contended by plaintiffs' attorneys that, as such advertisement is the only notice prescribed by statute (Code, § 1678), and none other is prescribed by the rules of court, it is therefore the only notice called for under the exception in the waiver aforesaid. But it appears from the papers submitted on this motion, which include the certificate of many leading lawyers and law firms, that it is the practice of the bar under such a notice of appearance to serve, and the usage to expect, a special notice of the sale intended to advise the defendant of the time and place when such sale is to take place. In view of such a general practice and usage, it is to be presumed that the respective attorneys for the plaintiffs and the defendant in this case had knowledge of them and practiced with reference to them, and that the notice of appearance for Mrs. Mooney was given in reliance upon that practice and usage, and was received with knowledge of the obligation it entailed. The notice of sale mentioned in the exception in the waiver could not have been understood to refer to the advertisement, for, in that case, the exception would be meaningless, as the advertisement is compulsory in all cases. The plaintiffs' papers on this motion concede, in effect, the practice and usage upon which defendant relied, for plaintiffs' attorneys attempted to cure the omission by a subsequent consent or admission from Mrs. Mooney's attorneys. They understood, therefore, that the notice of appearance referred to individual express notice by service of a paper, containing it, and their retention of the notice of appearance was equivalent to an agreement to give such notice, which, it appears, ordinarily consists of a copy of the advertisement, inclosed and addressed and served upon the attorneys in the ordinary way. No such notice of sale was given, and the defendant and her attorney did not know of the sale until after it had taken place. The property was bought in by the plaintiff for a moderate sum, and it would seem that the defendant, who was deprived of the opportunity to attend at the sale, ought, without further proof, be granted the resale which she asks."

In the case at bar there was no waiver of any notice of any proceeding in the action, and the plaintiff was entitled to notice of very step taken. On the other hand, it was held in the County Court of Erie County (Collins v. McArthur, 32 Misc. Rep. 538, 67 N. Y. Supp. 460) that a notice of appearance interposed in an action of foreclosure and sale on behalf of the mortgagor does not entitle his attorney to notice of sale, as the sale is merely an execution of the judgment and is a step of which the attorney is not entitled to notice, and therefore, where the sale is regular and fair the failure to give him notice of it affords the mortgagor no ground for a subsequent motion to vacate the sale and judgment of deficiency entered thereon. In the case of Frazier v. Swimm, 79 App. Div. 53, 79 N. Y. Supp. 787, Mr. Justice Woodward, writing for the Appellate Division in this department, in speaking of this question, although perhaps it was not necessary to the determination of the case then before the court, says:

"Mr. Graves, by appearing and waiving all notice, except notice of sale and surplus proceedings, practically admitted that he had no interest in the foreclosure except in the event of a surplus, and it may be fairly questioned whether, in waiving all notices, except those of sale and surplus, the defendant does not waive all notices except such as are provided by the statute. He might waive such a notice if he saw fit, and, if all the parties in interest did likewise, the question of whether the statutory notice was published or not could not be raised. This appears to have been the construction put upon a

like exception in the case of Collins v. McArthur, 32 Misc. Rep. 538 [67 N. Y. Supp. 460]. While that case is not an authority for this court, it is, perhaps, under the facts here presented, quite as much entitled to controlling weight as that of Eidlitz v. Doctor, 24 Misc. Rep. 209 [53 N. Y. Supp. 525], relied upon by the appellant."

And he then proceeds to distinguish the last-mentioned case from the one in which he was writing. I think it is probable that the learned justice was not aware of the fact that Collins v. McArthur was reversed on appeal by the Appellate Division of the Fourth Department on March 19, 1901, because the fact of such reversal does not appear under the same title in any of the regular series of reports and is only found in 8 N. Y. Ann. Cas. 358. Under a note of the principal case the reporter writes as follows:

"Order reversed, without costs of this appeal, and a resale ordered in each case upon condition that the appellant, within 20 days, gives a bond in the penalty of $250, to be approved upon notice, by the county judge of Erie county, conditioned that the amount realized upon such resale shall be sufficient to pay the expenses thereof and at least $600 in addition thereto; and in the event that such bond is not given the order in each case is affirmed, with costs. Order to be settled upon two days' notice by Mr. Justice Spring. All concur. Laughlin, J., concurs in result, and favors absolute reversal of orders and a resale, upon the ground that the appellants' attorney was entitled to service of notice of sale."

This decision was reported under another title (Collins v. Dunston) in 59 App. Div. 626, 69 N. Y. Supp. 1132.

The motion will be granted upon condition that within 30 days from the entry of the order hereon the plaintiff furnishes security in the sum of $150 for the costs of the resale, and $850 to cover any loss which the defendant may be able to show that he has sustained since the date of the original sale; such security to be in the form either of a deposit of cash in the court, or a bond of a surety company to be approved as to form and sufficiency by one of the justices of this court. Settle order on notice. No costs of this motion.